UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | Case No.: 1:21 CV 1641 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| LORAIN BOARD OF EDUCATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendant Lorain Board of Education's (the "Board") Motion for Summary Judgment (ECF No. 44). For the reasons that follow, the court grants the Motion.

### I. BACKGROUND

#### A.     Factual Background

Lorain High School hired Plaintiff Jane Doe as an intervention specialist in 2016. (Doe Dep. 12:19–13:15, ECF No. 40.) At the time, Defendant Jrayene Nimene was Lorain's Director of Student and Family Outreach. (Nimene Dep. 11:13–16, ECF No. 36.) For two years, Doe knew Nimene only in passing. (Doe Dep. 34:8–24.) Then, in 2018, Nimene joined Lorain's Climate and Culture Committee, which Doe managed. (*Id.* 28:13–21, 34:20–24.) Shortly thereafter, Nimene began visiting Doe's classroom "all the time." (*Id.* 37:4–5.)

Nimene's visits typically occurred during Doe's "planning period, which was at the end of

the day." (*Id.* 38:4–14.) Sometimes, though, "he would pop in during lunch"—and at "all different times." (*Id.*) Still other times, he would simply FaceTime Doe. (*Id.*) Yet throughout Nimene's visits, one factor remained constant: no students were ever around. (*Id.*; Doe Aff. ¶ 5, ECF No. 54.)

Initially, Nimene and Doe would discuss "issues in the school." (*Id.* ¶ 6.) But according to Doe, Nimene soon grew "aggressive" and "began to come on to [her]." (*Id.* ¶ 7.) "[O]ne of his signature moves" was to lean toward Doe, smell her perfume, and kiss her. (Doe Dep. 37:24–38:3.) He also "grop[ed] [Doe's] butt" several times. (Doe Aff. ¶ 42.) Although Doe "pushed him away," "asked him to stop," and disavowed any interest in a "personal relationship," Nimene ignored her. (*Id.* ¶¶ 7–8.) He began requesting nude photos from Doe and instructed her to "be naked on [her] bed" during a FaceTime call. (*Id.* ¶¶ 12–14.) Doe refused these requests. (*Id.* ¶ 12.)

As Nimene's harassment "became constant," Doe started locking her classroom door to ward off his intrusions. (*Id.* ¶ 20.) She also confided in several coworkers. (*Id.* ¶¶ 22–28.). But fearing retaliation from Lorain City School District CEO David Hardy—who "was doing things to embarrass [Doe's] coworkers and basically hurt their careers"—Doe held off on formally reporting Nimene's behavior to the Board. (Doe Dep. 39:3–19.)

When the 2018–19 school year ended, Lorain had several job openings. Hardy encouraged Doe to apply for them, and Doe did so, targeting the Dean of Academics position. (*Id.* 66:2–8.) Because of Hardy's "very unique interview process," Doe asked Nimene to help her prepare for the interview. (*Id.* 66:13–16.) So Nimene went to Doe's home, ostensibly to "give [her] pointers" and review the PowerPoint presentation that she had prepared. (*Id.* 67:6–10.) Yet when Nimene arrived, Doe's interview was an afterthought. Instead, he asked Doe three times where her bathroom was. (*Id.* 67:24–68:7.) After Doe showed him the way, Nimene "grabbed [her] from behind and

masturbated" on her lower back. (*Id.*) With Doe "mortified and … in shock," Nimene packed up his things and left (*Id.* 71:5–24; Doe Aff. ¶ 37.)

To Doe's surprise, Nimene was an unplanned, "last second" addition to her interview panel the next day—though he had no "role in the selection of the dean." (*Id.* ¶ 39; Gottschling Dep. 55:11–22, ECF No. 37.) Still shaken from Nimene's assault, Doe interviewed poorly, "fumbling" over her words, and didn't get the job. (Doe Aff. ¶ 39.) So she continued in her role as an intervention specialist, "afraid to come forward" because of Nimene's friendship with Hardy. (*Id.* ¶ 48; Doe Dep. 116:17–22.)

That changed in December 2019, when Doe "realized that [Hardy] was going to be fired." (*Id.* 47:5–48:7; *see also* Gottschling Dep. 11:1 (clarifying when Hardy left Lorain).) With Hardy on his way out, Doe, at the urging of her coworkers, filed a written complaint about Nimene's harassment to Jacquie Younker, Lorain's Chief People Officer. (Doe Dep. 47:12–48:15.) The Board enlisted a law firm to investigate the matter, and it found that Nimene had violated Lorain's sexual-harassment policy. (Poplar Dep. 57:10–12, ECF No. 38.) Nimene resigned, and this lawsuit followed. (Nimene Dep. 125:17–126:18.)

### B. Procedural Background

On March 12, 2020, Doe filed a discrimination complaint with the Equal Employment Opportunity Commission under 42 U.S.C. § 2000e-5(b). (*Id.* ¶ 31.) In May 2021, the EEOC issued her a Right to Sue letter under 42 U.S.C. § 2000e-5(f)(1). (*Id.* ¶ 32.) Doe then sued Nimene and the Board in the Lorain County Court of Common Pleas, asserting the following claims:

| **Claim** | **Source of Claim** | **Defendant** |
|---|---|---|
| Hostile work environment (based on sexual discrimination) in violation of 42 U.S.C. § 2000e-2(b) and O.R.C. § 4112.02(A). | 42 U.S.C. § 2000e-5(f); O.R.C. § 4112.99 (2001).[1] | The Board. |
| Aider-and-abettor liability in violation of O.R.C. § 4112.02(J). | O.R.C. § 4112.99 (2001). | Nimene. |
| Civil liability for sexual imposition or gross sexual imposition in violation of O.R.C. §§ 2907.05–06 and 2307.60. | O.R.C. § 2307.60(A)(1). | Nimene. |

Subsequently, the Board and Nimene removed Doe's case to this court. Following a period of discovery, the Board moved for summary judgment (ECF No. 44). Doe filed an opposition brief (ECF No. 51), along with the affidavits of five individuals: herself (ECF No. 54), teacher Cheryl Draga (ECF No. 55), special-education paraprofessional Andre Hopewell (ECF No. 56), teacher and union representative Alexis Simon (ECF No. 57), and school-safety officer Airon Thomas (ECF No. 59).[2] The Board then filed a reply brief (ECF No. 65). The matter is now ripe for adjudication.

---

[1] There is no dispute that Doe's claims under O.R.C. Chapter 4112 accrued before the April 2021 amendment to O.R.C. § 4112.99, which removed from that right of action's ambit "civil action[s] for employment discrimination." *See* O.R.C. § 4112.99(B) (amended version). And courts agree that the April 2021 amendments to O.R.C. Chapter 4112 have no retroactive effect. *See Burch v. Ohio Farmers Ins. Co.*, 2023-Ohio-912, ¶¶ 24–27, 211 N.E.3d 202 (Ct. App.) (collecting cases).

[2] As detailed in its August 25, 2023, Order (ECF No. 74), the court has struck from the record portions of these affidavits (and in the case of Draga's affidavit, the entire thing). In ruling on the Board's motion for summary judgment, the court did not consider any of these struck portions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or showing that materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

In reviewing summary-judgment motions, the court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the moving party meets its burden of production, then the non-moving party bears an affirmative duty to point out specific facts in the record that create a genuine issue of material fact. *Zinn v. United States*, 885

F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

#### A. Doe's Hostile-Work-Environment Claim

The Board moves for summary judgment on Doe's hostile-work-environment claim, brought in Count I under two statutes: Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act. Both statutes forbid employment discrimination "because of … sex." 42 U.S.C. § 2000e-2(a)(1); O.R.C. § 4112.02(A). And claims under both statutes implicate "the same standards." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009); *see also Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 197, 421 N.E.2d 128 (1981) (explaining that federal caselaw interpreting Title VII "is generally applicable to cases involving alleged violations of [the Ohio Civil Rights Act]"). Accordingly, the court analyzes Doe's Count I claims together.

As relevant here, "Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–67 (1986)). To establish a prima facie hostile-work-environment claim under Title VII, Doe must show: "(1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment;

(3) the harassment was based on sex[]; (4) the harassment created a hostile work environment; and (5) employer liability." *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009). In its Motion, the Board argues that no reasonable jury could find for Doe on the second, fourth, and fifth elements of her claim. The court starts (and ends) with the fifth element: employer liability.

### B. Employer-Liability Analysis

Under Title VII, "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance*, 570 U.S. at 424. In other words, when it comes to employer liability, a hostile-work-environment claim for coworker harassment hinges on whether the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Clark v. UPS*, 400 F.3d 341, 348 (6th Cir. 2005) (quoting *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999)). By contrast, "strict liability is imposed on employers for the harassing conduct of their supervisors." *Id.*

Here, the Board asserts that Nimene "cannot be deemed [Doe's] supervisor," and Doe does not argue otherwise. (Mot. at PageID #2344.) The Board is correct. As the Supreme Court held in *Vance*, "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance*, 570 U.S. at 424. And the record establishes that Nimene held no such power. (*See* Gottschling Dep. 127:20–128:11 (explaining that Nimene and Doe did not have a "reporting relationship," that Nimene did not evaluate Doe's teaching, and that Nimene did not set Doe's pay).) Tellingly, when Doe began working at Lorain, she didn't "know what [Nimene] did." (Doe Dep. 28:1–2.) For two whole years, their interactions were limited to hallway pleasantries. (*Id.* 34:8–24.) As Doe herself

testified: "we were coworkers. We were coworkers." (*Id.* 36:2–3.)[3]

To survive summary judgment, then, Doe must adduce evidence that the Board "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Clark*, 400 F.3d at 3348. And at first blush, this seems a tall order. After all, Doe admits that when she complained to the Board about Nimene's conduct, the Board "promptly investigated [her] complaint." (Doe Dep. Ex. A at PageID #2179.) As part of that investigation, the Board put Nimene on leave; interviewed Doe, Nimene, and several witnesses; and ultimately "found in [Doe's] favor." (*Id.* 52:12–55:20.) The Board then asked Nimene to resign, and he complied. (Nimene Dep. 125:17–126:18.) It's difficult to imagine what more "prompt and appropriate corrective action" the Board could have taken in response to Doe's complaint.

Doe, for her part, doesn't deny this reality. Instead, she argues that the Board knew of Nimene's harassment well before her December 2019 complaint—and that it should have acted then.

---

[3] For this reason, the Board's assertion of the *Faragher*/*Ellerth* affirmative defense necessarily fails. To avoid strict liability in supervisor-harassment cases in which the victim suffers no adverse employment action, employers may raise the so-called *Faragher*/*Ellerth* defense. *See generally Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). *Faragher*/*Ellerth* requires an employer to establish "that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424. In its Motion, the Board argues that even if fact issues exist on each element of Doe's hostile-work-environment claim, *Faragher*/*Ellerth* nevertheless entitles it to summary judgment. But again, *Faragher*/*Ellerth* applies to supervisor harassment, not coworker harassment. *See id.* (describing the "different rules" that apply to supervisor harassment); *Bartniak v. Cushman & Wakefield, Inc.*, 223 F. Supp. 2d 524 (S.D.N.Y. 2002) ("*Faragher*/*Ellerth* does not apply to this case. When a hostile working environment is created by a co-worker, the employer is not subject to strict liability and there is no need to consider an affirmative defense."). So *Faragher*/*Ellerth* cannot aid the Board here.

As Doe points out, "[a]n employer is deemed to have notice of harassment reported to any supervisor or department head who has been authorized—or is reasonably believed by a complaining employee to have been authorized—to receive and respond to or forward such complaints to management." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 277 (6th Cir. 2009). And Doe notes four Board employees whose knowledge of Nimene's harassment supposedly gave the Board notice of the same: two security guards, a teacher, and Principal Dan Garvey. (Opp. at PageID #2477–78.)

To trigger *Gallagher*'s employer-notice standard, however, not just any employee's knowledge of the harassment will do. Rather, notice will be imputed to an employer only where the harassment has been "reported to a[] supervisor or department head." *Gallagher*, 567 F.3d at 277. And absent evidence to the contrary, there is no reason to believe that the security guards or the teacher who knew of Nimene's harassment qualified as such. Accordingly, under *Gallagher*, their knowledge does not provide a basis on which to impute notice to the Board.

But Principal Garvey's knowledge of the harassment is a different story. Although Doe nowhere asserts that Garvey was her supervisor, at summary judgment, "all reasonable inferences must be made in favor of the non-moving party." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). And given a school principal's traditional job duties, it is reasonable to infer that Garvey supervised Doe. Thus, a fact issue as to whether Garvey knew of Nimene's harassment would pose trouble for the Board at summary judgment—at least as to employer liability.

According to Doe, Garvey knew of Nimene's harassment because of a FaceTime call from Nimene to Doe that he had observed. (Doe Aff. ¶ 25.) When Nimene called Doe, she was meeting with Garvey in his office. Doe answered the call and "let Mr. Garvey see who it was." (*Id.* ¶ 26.) After the call, Doe "told Mr. Garvey that [Nimene] was contacting [her] a lot and it was bothering

[her]." (*Id.* ¶ 26.) Garvey never followed up with Doe about the situation. (*Id.*)

Even viewing this testimony in the light most favorable to Doe, it fails to create a genuine issue of material fact as to whether Garvey knew that Nimene was *sexually* harassing Doe. On this score, *Gallagher* is instructive. There, the Sixth Circuit held summary judgment improper where an employee had "complained frequently" to her supervisor about "unprofessional and sexually offensive workplace conduct." *Gallagher*, 567 F.3d at 268. True, the employee did not "characterize all of her complaints as sexual harassment complaints." *Id.* at 277. But she characterized many of them as such, and crucially, her supervisor witnessed much of the "pervasive" harassment himself. *Id.* By contrast, Garvey witnessed a single FaceTime call between Nimene and Doe—a call that did not contain any hint of sexual harassment. Moreover, Doe never told Garvey that Nimene was sexually harassing her; she reported to Garvey only that Nimene "was contacting her a lot." (Doe Aff. ¶ 26.) Needless to say, there's quite a bit of daylight between sexual harassment and simply contacting someone a lot.

Doe's own deposition testimony underscores the point. At her deposition, the Board asked Doe whether, before submitting her December 2019 complaint, she had ever complained to Garvey—or any Lorain administrator—about Nimene's sexual harassment. In no uncertain terms, Doe responded in the negative:

> Q: So at any point in time after being touched by Mr. Nimene, did you complain to someone at administration?
>
> A: No, I don't believe so.
>
> Q: You didn't complain to the building principal?
>
> A: The building principal witnessed him FaceTiming me. He started to FaceTime me during the school day.

> Q: That wasn't my question. My question was, did you complain to the building principal?
>
> A: Oh, I thought you heard me. I don't believe so.

(Doe Dep. 45:16–46:3.)

By Doe's own account, then, neither Garvey nor any Lorain supervisor had reason to know of Nimene's harassment until December 2019—when Doe submitted her formal complaint. And there is no dispute that the Board took "prompt and appropriate corrective action" then. *See Clark*, 400 F.3d at 3348. Accordingly, no reasonable jury could find in Doe's favor on the employer-liability element of her hostile-work-environment claim. Because Doe must establish that element to prevail against the Board, the Board is entitled to summary judgment on Count I of Doe's Complaint.

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendant Lorain Board of Education's Motion for Summary Judgment (ECF No. 44).

IT IS SO ORDERED.

> */s/ SOLOMON OLIVER, JR.*
> UNITED STATES DISTRICT JUDGE

September 15, 2023