UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | Case No.: 1:21 CV 1641 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| LORAIN BOARD OF EDUCATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are three motions for summary judgment. Two relate to Defendant Jrayene Nimene's counterclaims against Plaintiff Jane Doe: one from Doe (ECF No. 39), and one from Nimene (ECF No. 76). Further, Nimene has moved for summary judgment on Doe's claims against him (ECF No. 75). For the reasons that follow, the court grants Doe's motion for summary judgment on Nimene's counterclaims, denies Nimene's motion for summary judgment on his counterclaims, and grants in part and denies in part Nimene's motion for summary judgment on Doe's claims.

## I. BACKGROUND

### A.      Factual Background

Lorain High School hired Plaintiff Jane Doe as an intervention specialist in 2016. (Doe Dep. 12:19–13:15, ECF No. 40.) At the time, Defendant Jrayene Nimene was Lorain's Director of Student and Family Outreach. (Nimene Dep. 11:13–16, ECF No. 36.) For two years, Doe knew Nimene only in passing. (Doe Dep. 34:8–24.) Then, in 2018, Nimene joined Lorain's Climate and Culture Committee, which Doe managed. (*Id.* 28:13–21, 34:20–24.) Shortly thereafter, Nimene

began visiting Doe's classroom "all the time." (*Id.* 37:4–5.)

Nimene's visits typically occurred during Doe's "planning period, which was at the end of the day." (*Id.* 38:4–14.) Sometimes, though, "he would pop in during lunch"—and at "all different times." (*Id.*) Still other times, he would simply FaceTime Doe. (*Id.*) Yet throughout Nimene's visits, one factor remained constant: no students were ever around. (*Id.*; Doe Aff. ¶ 5, ECF No. 54.)

Initially, Nimene and Doe would discuss "issues in the school." (*Id.* ¶ 6.) But according to Doe, Nimene soon grew "aggressive" and "began to come on to [her]." (*Id.* ¶ 7.) "[O]ne of his signature moves" was to lean toward Doe, smell her perfume, and kiss her. (Doe Dep. 37:24–38:3.) He also "grop[ed] [Doe's] butt" several times. (Doe Aff. ¶ 42.) Although Doe "pushed him away," "asked him to stop," and disavowed any interest in a "personal relationship," Nimene ignored her. (*Id.* ¶¶ 7–8.) He began requesting nude photos from Doe and instructed her to "be naked on [her] bed" during a FaceTime call. (*Id.* ¶¶ 12–14.) Doe refused these requests. (*Id.* ¶ 12.)

As Nimene's harassment " became constant," Doe started locking her classroom door to ward off his intrusions. (*Id.* ¶ 20.) She also confided in several coworkers. (*Id.* ¶¶ 22–28.). But fearing retaliation from Lorain City School District CEO David Hardy—who "was doing things to embarrass [Doe's] coworkers and basically hurt their careers"—Doe held off on formally reporting Nimene's behavior to the Board. (Doe Dep. 39:3–19.)

When the 2018–19 school year ended, Lorain had several job openings. Hardy encouraged Doe to apply for them, and Doe did so, targeting the Dean of Academics position. (*Id.* 66:2–8.) Because of Hardy's "very unique interview process," Doe asked Nimene to help her prepare for the interview. (*Id.* 66:13–16.) So Nimene went to Doe's home, ostensibly to "give [her] pointers" and review the PowerPoint presentation that she had prepared. (*Id.* 67:6–10.) Yet when Nimene arrived,

-2-

Doe's interview was an afterthought. Instead, he asked Doe three times where her bathroom was. (*Id.* 67:24–68:7.) After Doe showed him the way, Nimene "grabbed [her] at the waist" and masturbated on her lower back. (*Id.*; Doe Aff. ¶ 35) With Doe "mortified and … in shock," Nimene packed up his things and left (Doe Dep. 71:5–24; Doe Aff. ¶ 37.)

To Doe's surprise, Nimene was an unplanned, "last second" addition to her interview panel the next day—though he had no "role in the selection of the dean." (*Id.* ¶ 39; Gottschling Dep. 55:11–22, ECF No. 37.) Still shaken from Nimene's assault, Doe interviewed poorly, "fumbling" over her words, and didn't get the job. (Doe Aff. ¶ 39.) So she continued in her role as an intervention specialist, "afraid to come forward" because of Nimene's friendship with Hardy. (*Id.* ¶ 48; Doe Dep. 116:17–22.)

That changed in December 2019, when Doe "realized that [Hardy] was going to be fired." (*Id.* 47:5–48:7; *see also* Gottschling Dep. 11:1 (clarifying when Hardy left Lorain).) With Hardy on his way out, Doe, at the urging of her coworkers, filed a written complaint about Nimene's harassment to Jacquie Younker, Lorain's Chief People Officer. (Doe Dep. 47:12–48:15.) The Board enlisted a law firm to investigate the matter, and it found that Nimene had violated Lorain's sexual-harassment policy. (Poplar Dep. 57:10–12, ECF No. 38.) Nimene then resigned. (Nimene Dep. 125:17–126:18.)

### B.   Procedural Background

On March 12, 2020, Doe filed a discrimination complaint with the Equal Employment Opportunity Commission under 42 U.S.C. § 2000e-5(b). (*Id.* ¶ 31.) In May 2021, the EEOC issued her a Right to Sue letter under 42 U.S.C. § 2000e-5(f)(1). (*Id.* ¶ 32.) Doe then sued Nimene and the Board in the Lorain County Court of Common Pleas, asserting three claims: (1) hostile work

environment under Title VII and Ohio law; (2) aider-and-abettor liability under Ohio law; and (3) civil liability for criminal conduct under Ohio law. Nimene counterclaimed, asserting four claims: (1) defamation per se; (2) intentional interference with a contract; (3) intentional interference with prospective contractual relations; and (4) invasion of privacy.

Both Doe and Nimene have moved for summary judgment on Nimene's counterclaims, and Nimene has moved for summary judgment on Doe's claims. The matters are now ripe for adjudication.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or showing that materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

In reviewing summary-judgment motions, the court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and

-4-

weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the moving party meets its burden of production, then the non-moving party bears an affirmative duty to point out specific facts in the record that create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

**A.    Nimene's Counterclaims**

The court begins with the competing summary-judgment motions concerning Nimene's counterclaims. Nimene asserted counterclaims against Doe for: (1) defamation per se; (2) intentional interference with a contract; (3) intentional interference with prospective contractual relations; and (4) invasion of privacy. The court addresses these counterclaims in turn.

*1.    Defamation per se*

Nimene contends that Doe made false, defamatory statements about Nimene's sexually harassing Doe to state and federal courts, the EEOC, the Ohio Department of Education, police

officers, school administrators, and news sources. (Nimene Mot. at PageID #2730). In response, Doe argues that Nimene's defamation claim is barred by the litigation privilege, also known as the absolute privilege. *See Surace v. Wuliger*, 25 Ohio St. 3d 229, 233 (1986) (holding that "a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears").

Nimene counters that the litigation privilege does not bar his defamation per se claim because Doe's statements were not limited to this litigation; instead, she made them to the Board's investigator. The problem with this argument, however, is that any statements Doe made to the Board in the context of its investigation are confidential under Ohio law. *See* O.R.C. § 3319.311(A)(1). Indeed, this statute is clear that information gathered during this type of investigation is confidential and therefore cannot be used as evidence in the court of law. *Bennett v. Ohio Dep't of Educ.*, 2022-Ohio-1747, ¶36 (Ct. App.) Therefore, Nimene cannot use the information obtained during Poplar's investigation as evidence in this matter. *See id.*

In sum, the litigation privilege bars Nimene's defamation per se claim because all of Doe's alleged communications bear some reasonable relation to the judicial proceeding. *See Lasater v. Vidahl*, 2012-Ohio-4918, 979 N.E.2d 828, 831 (Ct. App.) (finding the allegation of criminal activity to police and a magistrate are entitled to absolute privilege from civil liability). Moreover, even if Doe's statements to the Board's investigator were not covered by the privilege, they are still statutorily confidential. And Nimene cites nothing in the record suggesting that Doe said anything to the news media about Nimene. Accordingly, Doe is entitled to summary judgment on Nimene's defamation per se claim.

-6-

*2.     Intentional interference with a contract*

Nimene's second claim against Doe is that Doe intentionally interfered with Nimene's contracts with the Lorain and Oberlin school districts by telling the media that Nimene had sexually harassed her. Nimene argues that Doe did this because she was upset that Lorain had not hired her as an administrator.

In order to prevail on a claim for intentional interference with a contract, Nimene must demonstrate that (1) there was an existing contract; (2) Doe had knowledge of the contract, (3) Doe intentionally procured the contract's breach, (4) Doe's actions were not justified, and (5) damages. *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). Here, Doe is entitled to summary judgment because there is no evidence in the record supporting the third element: that Doe intentionally "procured" Nimene to breach his existing contract with Lorain. Indeed, Nimene does not even allege that he breached his contract with Lorain. (Answer at 17–18, ECF No. 4.) Nimene's failure in this regard underscores the inapplicability of his intentional-interference claim to the case at bar. Intentional-interference claims typically arise when a business wants to hire an employee who works for another business and consequently prompts the employee to breach his existing contract with the other business. Because nothing like that is alleged to have happened here, Doe is entitled to summary judgment on Nimene's intentional-interference claim.

*3.     Intentional interference with prospective contractual relations*

Next, Nimene asserts that Doe committed the tort of intentional interference with prospective contractual relations by raising sexual-harassment allegations that, according to Nimene, caused Lorain and Oberlin to "terminate" him. (ECF No. 77 at PageID # 2768.) Under Ohio law, "[o]ne who intentionally and improperly interferes with another's prospective contractual

-7-

relation . . . is subject to liability to the other for the pecuniary harm resulting from the loss of the benefits of the relation." *Gray-Jones v. Jones*, 738 N.E.2d 64, 69–70 (Ohio App. Ct. 2000).

There are a number of problems with this claim. For starters, when Doe reported that Nimene had sexually harassed her, Nimene was already employed by Lorain; his contractual relation with that district thus was not "prospective." So the claim can apply only to Doe's alleged interference with Nimene's prospective Oberlin contract. And as to that, Doe correctly observes that Nimene cites nothing in the record suggesting that Doe "intentionally and improperly interfere[d]" with Nimene's prospective Oberlin contract. Indeed, in the Statement of Facts of his brief opposing Doe's motion for summary judgment on his counterclaims (ECF No. 77), Nimene cites from the record (sparingly) only his own declaration and the Board's investigative report into Doe's allegations. Furthermore, he cites neither of these materials in the section of his brief discussing his claim for intentional interference with prospective contractual relations (*See* ECF No. 77 at PageID #2768–69.) At any rate, neither of them contain anything from which a reasonable jury could find in favor of Nimene on this claim. And to the extent that Nimene attempts to rely on Doe's filing of this lawsuit to support his claim for intentional interference with prospective contractual relations, the litigation privilege bars that. *See A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 1995-Ohio-66, 73 Ohio St. 3d 1, 14–16. Accordingly, Doe is entitled to summary judgment on this claim.

### 4.    *Invasion of privacy*

In his last claim, Nimene asserts that Doe invaded Nimene's privacy by (1) intruding upon Nimene's seclusion or solitude and (2) placing Nimene in a false light. Doe claims that if there was any invasion of privacy, it was a result of her filing this lawsuit or filing a complaint to the Ohio

Board of Education and therefore not actionable. Doe asserts that Nimene does not provide any evidence to support his privacy claims.

To prevail on an intrusion-upon-seclusion theory, a plaintiff must show that the defendant intentionally intruded upon the solitude or seclusion of the plaintiff in a manner that would be highly offensive to a reasonable person. *Sustin v. Fee*, 431 N.E.2d 992, 994 (Ohio 1982). Similarly, to prevail on a false-light theory, a plaintiff must show that the defendant recklessly publicized information about the plaintiff that placed the plaintiff in a false light in a manner that would be highly offensive to a reasonable person. *Welling v. Weinfeld*, 2007-Ohio-2451, ¶¶ 22–24, 866 N.E.2d 1051. In addition, any invasion-of-privacy plaintiff must show that the information was shared to the public is true and considered private about the plaintiff. *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1097 (S.D. Ohio 2021).

Here, however, Nimene claims that Doe's statements were *untrue*. And while untrue statements can give rise to defamation liability, they cannot give rise to invasion-of-privacy liability. *Id.* Thus, both of Nimene's invasion-of-privacy claims necessarily fail, and so the court grants summary judgment to Doe on those claims.

### B.    Doe's Claims

Nimene has also moved for summary judgment on Doe's claims against him. To recap, Doe brought three claims in this lawsuit: (1) hostile work environment under Title VII and Ohio law; (2) aider-and-abettor liability under Ohio law; and (3) civil liability for criminal conduct under Ohio law. The court addresses these claims in turn.

#### 1.    *Hostile work environment*

The parties briefed Doe's hostile-work-environment claim as though she had asserted it

-9-

against Lorain and Nimene, as opposed to just Lorain. (ECF No. 75 at PageID #2690–98; ECF No. 81 at 6–17.) To the extent that Doe did assert her hostile-work-environment claim against Nimene, the court must grant summary judgment on that claim to Nimene. That is because "[a]n individual cannot be held personally liable for violations of Title VII." *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012); *see also Hauser v. City of Dayton Police Dep't*, 2014-Ohio-3636, ¶ 15, 17 N.E.3d 554 (applying the same rule to hostile-work-environment claims under Ohio law).

### 2. Aider-and-abettor liability

Under O.R.C. § 4112.02(J), Nimene can be held liable as an aider and abettor only if there was an underlying violation of Ohio antidiscrimination law. However, the court has previously granted summary judgment to Lorain on Doe's hostile-work-environment claim. (9/15/23 Order, ECF No. 83.) Nimene is therefore entitled to summary judgment on Doe's claim for aider-and-abettor liability.

### 3. Civil liability for criminal conduct

Under Ohio law, "[a]nyone injured in person or property by a criminal act . . . may recover full damages in[] a civil action," including attorneys' fees and costs. O.R.C. § 2307.60(A)(1). Importantly, a defendant need not have "an underlying criminal conviction" to be liable under this statute. *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 11, 161 N.E.3d 603. Furthermore, "Ohio courts appear to assume that a plaintiff can prevail on a claim under Section 2307.60(A)(1) if she proves her claim by a preponderance of the evidence and that, to establish civil liability, the statute does not require proof beyond a reasonable doubt as would a criminal conviction." *Buddenberg v. Est. of Weisdack*, No. 1:18-CV-00522, 2024 WL 159001, at *54 (N.D. Ohio Jan. 16, 2024) (analyzing Ohio law).

-10-

Doe claims that Nimene's conduct constituted gross sexual imposition, in violation of O.R.C. § 2907.05(A). In relevant part, that statute makes it unlawful for any person to "have sexual contact with another" where "[t]he offender purposely compels the other person to submit by force or threat of force." *Id.* § 2907.05(A)(1). "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." *Id.* § 2907.01(B). And "force" is defined broadly to mean "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." *Id.* § 2901.01(A)(1).

Nimene argues that he is entitled to summary judgment on this claim because, according to him, gross sexual imposition "never occurred." (ECF No. 75 at PageID #2700.) But he does not claim that the record lacks evidence supporting a finding of gross sexual imposition. He also does not seem to acknowledge that on summary judgment, the court must construe the evidence in "the light most favorable" to Doe, "draw all inferences" in her favor, in order to conclude that he "is entitled to judgment as a matter of law." *Coble v. City of White House*, 634 F.3d 865, 867–68 (6th Cir. 2011); Fed. R. Civ. P. 56(a). To the contrary, Nimene simply reiterates *his* side of the story—that no gross sexual imposition occurred—and asks the court to grant him summary judgment on that basis. But the court cannot do that. After all, the record contains evidence from which a reasonable jury could find that Nimene committed gross sexual imposition against Doe—namely, Doe's testimony that Nimene "grabbed [Doe] at the waist" and, despite Doe's telling him "to stop," masturbated on her lower back. (Doe Dep. 67:24–68:7; Doe Aff. ¶ 35.) While Nimene may claim that Doe has "zero credibility," a jury may see things differently. (ECF No. 75 at PageID #2696.) Accordingly, the court finds that Nimene is not entitled to summary judgment on Doe's claim for

-11-

civil liability for criminal conduct.

## IV. CONCLUSION

For the foregoing reasons, the court grants Plaintiff Jane Doe's Motion for Partial Summary Judgment (ECF No. 39), denies Defendant Jrayene Nimene's Amended Motion for Summary Judgment (ECF No. 76), and grants in part and denies in part Defendant Jrayene Nimene's Amended Motion for Summary Judgment (ECF No. 75).

IT IS SO ORDERED.


/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE


March 29, 2024